UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

MARGO A. MIDDLETON                                                                          PLAINTIFF

      VS.                           Civil No. 2:14-cv-03012-MEF

CAROLYN W. COLVIN,                                                                          DEFENDANT
Commissioner of Social Security Administration

## MEMORANDUM OPINION

Plaintiff, Margo A. Middleton, brings this action under 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §423(d)(1)(A), 1382c(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. §405(g).

### I.    Procedural Background:

Plaintiff filed her application for DIB and SSI on March 29, 2011, alleging an onset date of June 1, 2009, due to chronic obstructive pulmonary disease ("COPD"), mitral valve prolapse, high blood pressure, depression, anxiety, bilateral organic brain syndrome, memory loss, chest pain and dizziness. (T. 180) Plaintiff's application was denied initially and on reconsideration. (T. 87-89, 77-78, 623-626). Plaintiff then requested an administration hearing, which was held in front of Administrative Law Judge ("ALJ"), Glenn A. Neel, on September 13, 2012. At the hearing Plaintiff requested and the ALJ approved to amend the onset date to November 17, 2010.[1]

---

[1] A prior application for disability was filed on March 4, 2008. In a Decision on November 16, 2010, ALJ Neel determined Plaintiff was not disabled.

1

At the time of the hearing Plaintiff was 49 years of age and had graduated from high school. Her past relevant work experience included working as a certified nursing assistant ("CNA") from 1990 to February 2002, and a cashier from November 2005 to December 2005 and August 2007 to July 2009. (T. 155)

On January 31, 2013, the ALJ found Plaintiff's degenerative disc disease, osteoarthritis of the lumbar spine, COPD, asthma, mood, anxiety, disruptive behavior, personality and painful disorders severe. (T. 14) Considering the Plaintiff's age, education, work experience and the residual functional capacity ("RFC") based upon all of her impairments, the ALJ concluded Plaintiff was not disabled prior to January 27, 2013. The ALJ determined Plaintiff had the RFC to perform sedentary work, except she could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. She could never climb ladders, ropes and scaffolds and must avoid even moderate exposure to pulmonary irritants such as temperature extremes, humidity, fumes, odors, dusts, gases and poor ventilation. In addition, Plaintiff could only do work where interpersonal contact was incidental to the work performed, the complexity of tasks was learned and performed by rote with few variables and little judgment involved and the supervision required was simple, direct and concrete. (T. 17) On January 27, 2013, Plaintiff's age category changed to individual closely approaching advanced age. After taking into consideration her age, education, work experience and RFC, the ALJ determined no jobs exited in significant numbers in the national economy which Plaintiff could have performed, and he found Plaintiff disabled as of January 27, 2013. (T. 24)

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on January 3, 2013. (T. 3-5) Plaintiff then filed this action on February 5, 2014. (Doc. 1) This case

is before the undersigned pursuant to consent of the parties. (Doc. 7) Both parties have filed briefs, and the case is ready for decision. (Doc. 11 and 12)

## II. Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart,* 292 F.3d. 576, 583 (8th Cir. 2002). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's decision." *Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000). "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Cox, v. Asture,* 495 F.3d 617, 617 (8th Cir. 2007). The AJL's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d, 964, 966 (8th Cir. 2003). The Court considers the evidence that "supports as well as detracts from the Commissioner's decision, and we will not reverse simply because some evidence may support the opposite conclusion." *Hamilton v. Astrue,* 518 F.3d 607, 610 (8th Cir. 2008). If after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel,* 221 F.3d at 1068.

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by

3

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3), 1382(3)(c). A Plaintiff must show that his or her disability, not simply their impairments, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

If such an impairment exists, the ALJ must determine whether the claimant has demonstrated that she is unable to perform either her past relevant work, or any other work that exists in significant numbers in the national economy. (20 C.F.R. §416.945). The ALJ applies a five-step sequential evaluation process for determining whether an individual is disabled. (20 C.F.R. §404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker,* 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §404.150, 416.920 (2003).

### III. Evidence Presented:

The medical evidence is as follows.

Plaintiff submitted records from 1974 that showed she tested positive for tuberculous. (T. 461) Psychologist, Beth A. Kalal, Ph.D., stated in a letter that she last treated Plaintiff February 7, 1997; however, she had shredded her files in June of 2009, pursuant to California law. Dr. Kalal indicated she diagnosed Plaintiff with major depressive disorder, recurrent, in partial remission. (T. 544) Plaintiff also submitted medical records from Kaiser Permanente in San Diego, California from 1993 to 2003. During this period of time, the records indicated Plaintiff had a tubal ligation, breathing problems and early degenerative disc narrowing. (T. 522)

On February 23, 2007, Plaintiff was seen at Baxter Regional Medical Center ("Baxter") due to breathing problems. She informed the doctors she had quit smoking. Upon examination, the doctor determined Plaintiff had wheezing throughout both lungs and increased expiratory phase. An X-

ray showed hyperinflation. The doctor diagnosed her with acute COPD and fever. (T. 592, 593-594) Plaintiff was directed to take Albuterol, Potassium Chloride, Prednisone and Azithromycin. (T. 594)

Plaintiff was treated at Baxter for respiratory complaints on January 29, 2008. Despite being diagnosed with COPD and told to stop smoking, Plaintiff continued to smoke. A chest X-ray revealed her lungs were hyperexpanded, but there was no sign of pneumothorax, pleural effusion, or confluent infiltrate. (T. 583) Mild interstitial changes were noted, however, the osseous structures and heart size were stable. She was treated with oxygen, bronchodilators, steroids and antibiotics. While some of her symptoms improved, she was still wheezing upon discharge. The doctor prescribed her Prednisone and Doxycycline. (T. 575)

Plaintiff was treated at Baxter emergency room on December 28, 2008, for bronchitis. (T. 380) Records indicated Plaintiff had a history of asthma, COPD, organic brain syndrome and mitral valve prolapse. (T. 381) An X-ray showed a mild diffuse interstitial change from the previous study, otherwise no acute process in the chest. (T. 384) Plaintiff was diagnosed with bronchitis and discharged. (T. 385)

On February 22, 2009, Plaintiff was admitted to Baxter for chest pain. At the time of the admission, Plaintiff worked at Burger King and smoked two to three packs of cigarettes daily. The doctor diagnosed Plaintiff with chest pain, generalized anxiety, gastroesophageal reflux disease, family history of coronary artery disease and tobacco abuse. (T. 351) An echocardiogram showed Plaintiff had a history of mitral valve prolapse. (T. 352) An X-ray of the chest showed the cardiovascular silhouette was within normal limits. Upon examination, the lungs revealed increased interstitial markings in the perihilar regions and an extension into the right subhilar region. The doctor believed it was secondary to poor inspiration, but a pneumonitis such as a viral

process could not be excluded, although he did not see a definite lobar or focal pneumonia. (T. 364) Another X-ray of the chest revealed mild hyperaeration in the lungs. He observed old granulomatous changes, but no focal infiltrates or effusions. (T. 365) Upon discharge, the doctor diagnosed her with mitral valve prolapse and chest pain. (T. 372)

Plaintiff was admitted to Baxter on February 22, 2009, due to chest pains. The stress test showed no ischemia and her cardiac enzymes were negative. The doctors discharged her on over-the-counter Prilosec and told her to follow up with her doctor. (T. 351, 371)

On May 22, 2009, Plaintiff went to Baxter and complained of difficulty breathing and coughing. (T. 336) An X-ray revealed pronounced interstitial disease, no effusions were seen and the doctor recommended Plaintiff see a pulmonologist. Plaintiff was diagnosed with asthma and bronchopneumonia and discharged with a prescription for Albuterol and aspirin. (T. 322-323)

Plaintiff was admitted to Baxter on November 9, 2009, for cough, congestion, and chest soreness. The records indicated she had a history of COPD, and continued to smoke, despite being counseled to stop. (T. 303) Plaintiff was given breathing treatments while in the emergency room. (T. 304) Results of the X-ray of her chest showed a few mild chronic interstitial and peribronchial markings, which were stable. There was no apparent pneumonia, mass, effusion, edema, pneumothorax or acute process and the vascularity and cardiac silhouette were within normal limits. (T. 314) Plaintiff stated she felt better and was discharged with the following prescriptions: Hydrocodone-Acetaminophen, Azithromycin and Prednisone. (T. 299)

On March 6, 2010, Plaintiff went to the emergency room at Baxter for cough and chest pain. Her past medical history indicated she was diagnosed with asthma, diabetes, hypertension and COPD. (T. 290) Plaintiff continued to smoke, despite being told to stop. (T. 290) Plaintiff's chest X-ray showed interstitial changes. There were no focal infiltrates, but some calcifications were

6

present. (T. 290, 295) Electrocardiogram showed sinus tachycardia and no acute ST elevation. (T. 291) Plaintiff's updrafts, lab work and steroids were ordered, but Plaintiff left the hospital against medical advice. The doctor observed she was having a COPD flare and believed Plaintiff hoped to have been treated. (T. 289)

On January 13, 2011, Plaintiff was seen at Baxter for chest pains and difficulty in breathing. She had tightness and pain in both arms and sides of her neck. (T. 267) Plaintiff's vital signs included a high peripheral pulse and tachycardia. (T. 268) The X-ray of Plaintiff's chest revealed an ill-defined density in the lateral right mid lung. The appearance was consistent with pneumonia. The radiologist recommended follow-up films. (T. 277) Electrocardiogram showed sinus tachycardia. (T. 269) No change in her chest pain was noted by the nurse after administering two rounds of nitroglycerin at 10:50 p.m. When the nurse returned at 11:07 p.m., the room was empty. Plaintiff had left the hospital against medical advice. (T. 270)

Mae Green, Plaintiff's friend and non-licensed counselor, submitted a mental RFC questionnaire on May 10, 2012. Ms. Green had daily contact with the Plaintiff and indicated she provided cognitive behavioral therapy, exercise, relaxation and talk therapy. (T. 546) Ms. Green indicated in a letter that Plaintiff's health, mentally and physically, had deteriorated in the last year, and Ms. Green was afraid Plaintiff might take her own life if she did not receive some assistance. (T. 234)

Dr. William Payne conducted two pulmonary function tests on Plaintiff one on May 27, 2011, and the other on October 5, 2012. Both tests concluded Plaintiff had severe obstructive airways disease. (T. 406, 607)

The opinion evidence is as follows.

Stephen R. Harris, Ph.D., psychologist, conducted a mental diagnostic evaluation of the Plaintiff on December 15, 2008. Dr. Harris observed Plaintiff was clean and neatly dressed, pleasant, but anxious throughout the evaluation. Her mood and affect were within normal limits and appropriate. She communicated effectively, was spontaneous and oriented to person, time, place and reality. The tests Dr. Harris performed indicated Plaintiff was a slow learner, had the average ability in auditory immediate memory and in all other primary memory indexes given. Plaintiff had difficulties with concentration skills and interpersonal relationships with rigid personalities. Dr. Harris diagnosed her with pain disorder associated with both psychological factors and general medical condition and a global assessment of functioning ("GAF") score of 45. Throughout the evaluation, Plaintiff communicated and interacted in a socially adequate manner, she showed no difficultly with basic work like tasks, she had the ability to concentrate, and showed no difficulty with persistence, or pace in completion of work like tasks. (T. 248-252)

On May 27, 2011, David L. Hicks, M.D., a state agency medical consultant, conducted an RFC assessment of the Plaintiff. Dr. Hicks opined, that due to her medically determinable impairment of COPD, and the lack of objective evidence to support Plaintiff's activities of daily living and medical source statement, Plaintiff had the residual functional capacity to perform light work, except she must avoid even moderate exposure to dust and fumes. (T. 402-403) Dr. Julius Petty, a state agency medical consultant, reviewed all of the evidence and affirmed Dr. Hicks' physical assessment on September 21, 2011. (T. 446)

Terry L. Efird, Ph.D., psychologist and state agency medical consultant, performed a mental diagnostic examination of the Plaintiff on June 27, 2011. Dr. Efird observed Plaintiff communicated in a reasonably intelligible and effective manner and interacted in a reasonably socially adequate manner. He opined Plaintiff had the capacity to perform basic cognitive tasks

required for basic work like activities and had performed them adequately during the evaluation. Plaintiff was able to track and respond adequately and there were no remarkable problems with attention or concentration on the tasks of digit span or serial threes. Dr. Efird found no remarkable problems with persistence and opined she appeared to have the mental capacity to persist with tasks, if desired. Plaintiff completed most tasks within an adequate time frame, with no remarkable problems with mental pace or performance. Dr. Efird found no obvious evidence of malingering. (T. 419-422)

Brad Williams, Ph.D., psychologist and state agency medical consultant, reviewed the medical records on June 30, 2011. Dr. Williams determined Plaintiff was moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods of time, make simple work-related decisions, complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors and set realistic goals or make plans independently of others. (T. 424) Dr. Williams opined Plaintiff was able to perform work where interpersonal contact was incidental to work performed and complexity of tasks was learned and performed by rote, few variables, little judgment, and supervision was simple, direct and concrete. (T. 425) On September 21, 2011, Sheri L. Simon, Ph.D., psychologist and state agency medical consultant, reviewed the medical evidence and affirmed Dr. William's mental assessment. (T. 441-445)

Dr. Shannon H. Brownfield, a state agency medical consultant, conducted two general physical consultative examinations of the Plaintiff on April 10, 2010, and June 8, 2012. With regard to the first examination, Dr. Brownfield diagnosed Plaintiff with COPD, low blood pressure, shoulder

pain, depression and anxiety, and migraines. (T. 260) Dr. Brownfield opined Plaintiff was severely limited in exertion and prolonged activity, and moderately limited in lifting, stooping and bending.

During his second physical examination, Dr. Brownfield observed Plaintiff's hip flexion was limited to ninety degrees and lumbar spine range of motion was limited seventy-five percent. (T. 553) Dr. Brownfield also observed mild paralumbar muscle spasms. (T. 554) X-rays revealed moderate to severe degenerative disk disease at L5-S1 with mild osteoarthritis and spurring at L1-L3. (T. 554) Dr. Brown diagnosed Plaintiff with low back pain, COPD, depression and anxiety. Based upon the results of the examination, Dr. Brown opined Plaintiff had moderate to severe limitations in maintaining prolonged positions of stooping, bending, lifting and exertion. (T. 555)

On October 26, 2012, Robert, L. Hudson, Ph.D., psychologist and state agency medical consultant, performed a mental diagnostic evaluation on the Plaintiff. Dr. Hudson diagnosed Plaintiff with mood disorder, not otherwise specified, disruptive behavior disorder, not otherwise specified, personality disorder, not otherwise specified and a GAF score of 60-65. Dr. Hudson opined there would not be significant limitations on her adaptive or communicative abilities. She had no significant limits on persistence in completing tasks or completion of tasks in a timely manner. However, Plaintiff would be limited in social interaction, as she had problems getting along with others and in her mental and cognitive abilities on basic work-like tasks. (T. 620-621)

### IV.   Discussion:

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff has not been disabled prior to January 27, 2013. Plaintiff raised one issue on appeal: the ALJ erred in step five of the sequential evaluation process when the ALJ improperly relied upon the guidelines to find the Plaintiff not disabled prior to January 27, 2013. (Doc. 1, pp. 5-8) The undersigned finds that the ALJ conducted a proper step

five analysis, and that substantial evidence supports the ALJ's determination that the Plaintiff was not disabled prior to January 27, 2013.

**ALJ's Step Five Analysis:**

In order to determine whether the ALJ conducted a proper step five analysis, the Court must first determine whether the ALJ's RFC determination was supported by substantial evidence. "The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole." *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) (quotation and citation omitted).

It is the ALJ's duty to determine the Plaintiff's RFC. Before doing so, the ALJ must determine the applicant's credibility, and how the Plaintiff's subjective complaints play a role in assessing his RFC. *Pearsall v. Massanari*, 274 F.3d at 1217-18. An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1230, 1322 (8th Cir. 1984). The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) and functional restrictions. The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. *Id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart*, 363 F.3d 731, 739 (8th Cir. 2004).

To conduct the proper *Polaski* analysis, "[m]erely quoting *Polaski* is not good enough, especially when an ALJ rejects a claimant's subjective complaints of pain." *Hall v. Chater*, 62 F.3d 220, 223 (8th Cir. 1995). Instead, "*Polaski* requires that an ALJ give full consideration to all of the evidence presented relating to subjective complaints." *Ramey v. Shalala*, 26 F.3d 58, 59 (8th Cir. 1994). To that end, "[w]hen making a determination based on these factors to reject an individual's complaints, the ALJ must make an express credibility finding and give his reasons for discrediting the testimony." *Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir. 1996) (citing *Hall*, 62 F.3d at 223). Such a finding is required to demonstrate the ALJ considered and evaluated all of the relevant evidence. *See Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir. 1995) (citing *Ricketts v. Secretary of Health and Human Servs.*, 902 F.2d 661, 664 (8th Cir. 1990)). However, if "the ALJ did not explicitly discuss each *Polaski* factor in a methodical fashion," but "acknowledged and considered those factors before discounting [the claimant's] subjective complaints of pain .... An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where ... the deficiency probably had no practical effect on the outcome of the case." *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996) (citing *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir. 1987)).

The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible. Although the ALJ employed a bit of Social Security boilerplate in stating that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision," the ALJ did appropriately address Plaintiff's credibility by

examining and addressing the relevant medical evidence, application documents, and testimony at the hearing in accordance with applicable regulations, rulings and Eighth Circuit case law. (T. 19)

In applying the factors discussed in *Polaski*, the ALJ found the Plaintiff's symptoms were not entirely credible. Plaintiff testified whenever she was in a lot of pain or nervous she smoked, despite the fact she had COPD and had been counseled numerous times to stop smoking. (T. 290, 303, 583, 667) *See Johnson v. Bowen,* 866 F.2d 274, 275 (8th Cir. 1989)(failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits); *See also* 20 C.F.R. § 404.1530(a); 20 C.F.R. § 416.930(a). Plaintiff testified she stopped smoking by being active. Her friends would take her to swim, play pool, bowl and dance. (T. 668-669) The ALJ determined Plaintiff's testimony showed her limitations were not as limiting as alleged. Moreover, the ALJ considered the fact that Plaintiff took over-the-counter medications, which made her pain tolerable. (T. 19) *See Hepp v. Astrue*, 511 F. 3d 798, 807 (8th Cir. 2008) (moderate, over-the-counter medication for pain does not support allegations of disabling pain). The ALJ also took into consideration the fact Plaintiff left the hospital twice while being treated. In the ALJ's opinion, this showed the Plaintiff's pain was not as great as what she had alleged. (T. 20)

Because the ALJ's credibility determination was supported by good reasons and substantial evidence, I conclude that it is entitled to deference. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others,

and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d at 844; *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).

The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) Therefore, a claimant's RFC assessment "must be based on medical evidence that addresses the claimant's ability to function in the workplace." "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Instead, the ALJ should seek opinions from a claimant's treating physicians or from consultative examiners regarding the claimant's mental and physical RFC. *Id.*; *Strongson v. Barnhart,* 361 F. 3d 1066, 1070 (8th Cir. 2004.)

In assessing the Plaintiff's RFC, the ALJ considered the Plaintiff's testimony at the hearing, disability interview, disability and function reports, difficulty breathing and pain, and her limitations with regard to pulmonary irritants. Despite the limitations above, Plaintiff stated she was able to take care of her personal needs, fix simple meals, do laundry and handle finances. (T. 19, 161-163)

The ALJ took into consideration third party testimony from Patsy Mae Ivy and Johnny Monty Pruitt, Jr, and the mental RFC by Mae Green. While the Plaintiff argued the ALJ should have given more weight to Ms. Green, she is not a licensed counselor. *See* 20 C.F.R. §404.1513 and §416.913 (Reports about an impairment must come from acceptable medical sources. Acceptable medical sources are identified as licensed physicians, licensed osteopaths, licensed or certified

psychologists, licensed optometrists and persons authorized to send summaries of medical records of hospitals, clinic, sanitarium, medical institution or health care facility.).

In addition to the medical evidence, the ALJ considered statements from treating and examining physicians in assessing the Plaintiff's RFC. The ALJ considered medical evidence that preceded the alleged onset date of November 17, 2010, and he discussed the treatment Plaintiff received from Baxter from 2007-2009, Kaiser Permanente from 1998-2003, and the 1973 tuberculosis diagnosis. (T. 19-20)

The ALJ included in his determination of the Plaintiff's RFC the pulmonary function tests, and numerous x-rays. (T. 19-20) The ALJ gave Dr. Brownfield's two general physical consultative examinations substantial weight, as they were consistent with the records from Plaintiff's treating physicians. From Dr. Brownfield's reports and Plaintiff's treating physicians, the ALJ determined Plaintiff could perform work at the sedentary exertional level with only occasional balancing, stooping, kneeling, crouching, crawling and climbing ramps and stairs. (T. 20) The ALJ then looked to Dr. Hicks' RFC and determined the Plaintiff's RFC should be further limited by avoiding even moderate exposure to pulmonary irritants. (T. 21)

With regard to Plaintiff's mental limitations, the ALJ determined she had difficulty with memory, feeling depressed and being around strangers. (T. 21) The ALJ took into consideration her mental limitations in her RFC assessment by finding Plaintiff could only perform work where the complexity of tasks was learned and performed by rote with few variables and little judgment involved and supervision was simple, direct and concrete. Due to her problems being around strangers, the RFC assessment limited her work to involve interpersonal contact that was incidental to the work performed.

The ALJ determined Plaintiff's RFC should not be limited to greater than the above, as Plaintiff had received little formal psychological treatment. (T. 21) The ALJ also took into consideration Dr. Efird's opinion, Dr. Harris' evaluation, Dr. Hudson's evaluation and Dr. Williams' review of the evidence, and determined their opinions did not support greater limitations in the Plaintiff's RFC. (T. 21-22) After a thorough review of the record, and based on the medical evidence, the state-agency evidence, and the testimony of the Plaintiff, the undersigned finds that substantial evidence supported the ALJ's RFC determination.

While it is the ALJ's duty to develop the record, the burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five. *Harris v. Barnhart,* 356 F.3d 926, 931 n. 2 (8th Cir. 2004). At this step, the Commissioner must determine whether work exists in significant numbers. This Circuit has adopted the standards set forth in *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). See *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (adopting *Hall)*. After discussing certain factors that a judge might consider in making this determination, such as the reliability of the claimant's and the vocational expert's testimony, the Hall court stated that "[t]he decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Jenkins*, 861 F.2d at 1087 (quoting *Hall*, 837 F.2d at 275).

Here, the Commissioner met her burden of showing the Plaintiff was not disabled prior to January 27, 2013, because the vocational expert's testimony was sufficient to show there were a significant number of jobs in the economy that the Plaintiff could have performed. While the Plaintiff contends the ALJ improperly relied upon the guidelines, the undersigned finds the ALJ conducted a proper analysis.

The medical-vocational guidelines, or grids, "are a set of charts listing certain vocational profiles that warrant a finding of disability or non-disability." *McCoy v. Astrue*, 648 F.3d 605, 613 (8th Cir. 2011) (citing 20 C.F.R. Part 404, Subpt. P, App. 2). The grids come into play at step five of the analysis, where "the burden shifts to the Commissioner to show that the claimant has the physical residual capacity to perform a significant number of other jobs in the national economy that are consistent with her impairments and vocational factors such as age, education, and work experience." *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001). "If the ALJ's findings as to RFC, age, education, and work experience fit any of the combinations of those criteria contained in the Tables in Appendix 2 to Part 404, then the ALJ must reach the conclusion (either 'disabled' or 'not disabled') directed by the relevant Rule or line of the applicable Table." *Reed v. Sullivan*, 988 F.2d 812, 816 (8th Cir.1993) (internal quotation marks and citation omitted).

If a claimant suffers from only exertional impairments, the Commissioner may refer to the Medical–Vocational Guidelines to conclude whether the claimant has the RFC to perform work which exists in significant numbers in the national economy. *See Pearsall v. Massanari*, 274 F.3d at 1219; *Gray v. Apfel*, 192 F.3d 799, 802 (8th Cir. 1999). If a claimant has non-exertional impairments, the Guidelines generally are not controlling and cannot be used to direct a conclusion of disabled or not disabled without regard to other evidence, such as vocational testimony. *Hunt v. Heckler*, 748 F.2d 478, 480 (8th Cir. 1984).

In the case at hand, Plaintiff had both exertional and non-exertional limitations. Thus, the ALJ utilized a vocational expert to determine if any jobs existed in significant numbers in the national economy that the Plaintiff could have performed. At the hearing, the ALJ proposed the hypothetical of an individual who was the same age, education and past work as the Plaintiff, limited to sedentary work, as defined by the Social Security Regulations; further limited to only

occasional climbing ramps/stairs; never climbing ladders, ropes, scaffolds; and, only occasional balancing, stooping, kneeling, crouching and crawling. The individual must avoid even moderate exposure to pulmonary irritants to include temperature extremes, humidity, fumes, odors, dust, gases and poor ventilation. The individual was able to perform work where interpersonal contact was incidental to the work performed; the complexity of tasks was learned and performed by rote with few variables, with little use of judgment; and, where supervision was simple, direct and concrete. (T. 689-691)

The vocational expert testified that given all of the factors, Plaintiff would have been able to perform the requirements of representative occupations such as clerical worker (with 78,000 jobs in the national economy and 580 jobs in Arkansas), an assembler (with 21,000 jobs in the national economy and 315 jobs in Arkansas), and inspector (with 4,000 jobs in the national economy and 50 jobs in Arkansas). All of the jobs above would be performed at a sedentary level and were unskilled. The vocational expert also stated her testimony was consistent with the information found in the Dictionary of Occupational Titles. (T. 690-691, 695)

The ALJ properly relied upon the testimony of the vocational expert to determine that prior to January 27, 2013, jobs existed in significant numbers in the national economy in which Plaintiff could have performed. The undersigned finds that the ALJ conducted a proper step five analysis, and that substantial evidence supported the ALJ's determination that the Plaintiff was not disabled prior to January 27, 2013.

### V.    Conclusion:

Having carefully reviewed the record as a whole, the undersigned finds that substantial evidence supports the Commissioner's decision denying Plaintiff benefits prior to January 27,

2013, and that the Commissioner's decision should be affirmed. Plaintiff's Complaint should be dismissed with prejudice.

Dated this 17th day of April, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE